IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| MERCY D. ARMAH-EL-AZIZ, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:15-cv-261 (JCC/MSN) |
| | ) | |
| KIMBERLY ZANOTTI, FIELD OFFICE DIRECTOR, WASHINGTON FIELD OFFICE, U.S. CITZENSHIP AND IMMIGRATION SERVICES, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M   O P I N I O N

This action brought pursuant to the Administrative Procedures Act, 5 U.S.C. § 702 <u>et seq.</u> ("APA"), is before the Court on the parties' cross-motions for summary judgment. [Dkts. 7, 11.]  For the following reasons, the Court will deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

### I. Background

The following facts, taken from the parties' briefs and the administrative record [Dkts. 6-1, 6-2, 6-3], are undisputed unless otherwise indicated.  The Court will refer to the Plaintiffs individually by their first names, as both individuals now share the surname "El-Aziz."

1

Plaintiff Rashid El-Aziz (hereinafter "Rashid") is a citizen of Ghana.  (R. 134, 148-49.)  Rashid entered the United States on March 5, 2005 pursuant to a visitor visa that expired on April 30, 2005.  (R. 111, 134.)  In May of 2005, shortly after his visa expired, Rashid met Ms. Celeste Dempsey (hereinafter "Ms. Dempsey").  (R. 125 ¶ 1.)  On October 4, 2005, Rashid and Ms. Dempsey were married in Carrabus County, North Carolina.  (R. 228.)  On December 19, 2005, Ms. Dempsey filed an I-130 Petition for Alien Relative on behalf of Rashid.[1]  (R. 223-25.)  Ms. Dempsey named Rashid as her spouse and beneficiary.  (Id.)  In the petition, Ms. Dempsey stated that both she and Rashid presently resided at 6314 South Kings Highway, Alexandria, Virginia, and that they intended to reside there in the future.  (Id.)  Ms. Dempsey also stated that she was presently employed by the Charlotte Observer as an Independent Carrier in North Carolina.  (R. 225.)

In support of the I-130 Petition, Ms. Dempsey submitted: (1) a residential lease for "Rashid and Celeste El-Aziz" at 6314 South Kings Highway, Alexandria, Virginia for the term of January 1, 2006 to December 31, 2008 (R. 49-51); (2) a letter from the Charlotte Observer dated October 5, 2005 that

---

[1] For an alien to immigrate to the United States, he or she must be the recipient of an immigrant visa.  See generally 8 U.S.C. §§ 1151-54.  A United States citizen parent, child, or spouse can petition for an immigrant visa on behalf of the alien.  8 U.S.C. § 1151(2)(A)(i).

2

confirmed Ms. Dempsey's employment as an Independent Carrier for the Charlotte Observer (R. 53); and (3) tax forms in Ms. Dempsey's name for 2002 with an address in Columbia, South Carolina, for 2003 with an address in Camden, South Carolina, and for 2004 with an address in Charlotte, North Carolina (R. 55-60).  On July 19, 2006, after an interview with a representative from the United States Citizenship and Immigration Services ("USCIS"), Ms. Dempsey withdrew the I-130 Petition, stating:

> I handwrote the answers to the application and he typed/or had it typed up.  I did not submit the letter from the Charlotte Observer, the figures on the W-2 have been changed.  I also did not submit the lease.
>
> Celeste Dempsey
> 12222 Old Timber Rd.
> Charlotte, NC 28269

(R. 222.)[2]  On December 16, 2009,[3] USCIS acknowledged the withdrawal and deemed the I-130 Petition null and void.  (R. 221.)

---

[2] Defendants contend that contemporaneous notes from the USCIS adjudicator identified the marriage as fraudulent.  (See Defs.' Mem. in Supp. [Dkt. 12] at 9 (citing R. 45).)  The Court is unable to make this determination based on the documents in the record alone, but does note that one page entitled "Form I-485 Processing Worksheet" has the word FRAUD underlined and written across the top of the page.  (R. 43.)

[3] It is unclear based on the record now before the Court why this acknowledgment came over three years after Ms. Dempsey withdrew the I-130 Petition.

On November 9, 2007, Ms. Dempsey and Rashid were divorced by a "Decree of Divorce a Vinculo Matrimonii" entered in the Circuit Court of the City of Alexandria.  (R. 196-98.) The Divorce Decree stated that "since December 18, 2005, the parties have been living separate and apart without cohabitation or interruption," which was a little over two months after they were married and one day before the I-130 Petition was filed. (R. 196.)  On September 23, 2009, the United States Department of Homeland Security (hereinafter "Homeland Security") determined that Rashid married Ms. Dempsey "for the purpose of evading provisions of the immigration laws."  (R. 212-13.)  Four days later, on September 27, 2009, Homeland Security created a "Record of Deportable/Inadmissible Alien" for Rashid based on the alleged marriage fraud with Ms. Dempsey.  (R. 214-15.)  On January 12, 2010, Homeland Security ordered Rashid to appear before an immigration judge through a "Notice to Appear" in removal proceedings under section 240 of the Immigration and Nationality Act ("INA").  (R. 216-220.)[4]

On November 6, 2010, Rashid married Plaintiff Mercy Armah (hereinafter "Mercy") in Springfield, Virginia.  (R. 202.) Mercy, also originally from Ghana, became a naturalized United States citizen on February 11, 2003.  (R. 143-44.)  On May 12,

---

[4] Rashid's removal proceeding is still pending, with the next hearing set for February 11, 2016 in Arlington, Virginia. (Pl.'s Mot. for Summ. J. [Dkt. 7] at 8.)

2011, Mercy, through counsel, filed an I-130 Petition for Alien
Relative on behalf of Rashid.  (R. 134-35.)  On August 2, 2011,
Rashid and Mercy were interviewed by a USCIS representative.
During that interview, Rashid made the following sworn statement
regarding his previous marriage to Ms. Dempsey:

> During our time of marriage, Celeste was
> making reservations and arrangements to
> finally move to Virginia.  She visited often
> and I did too.  She was residing with an
> aunt of hers in Charlotte, N.C.  We were
> working very hard to resolve our living
> arrangements.  She would visit me and stay
> for a week and I would visit for about 2
> days because I was working at that time.
> She visited and stayed for before
> Thanksgiving 2005.  I also visited a few
> times in 2005 also [sic].

(R. 138.)  On September 29, 2011, USCIS issued a "Notice of
Intent to Deny Visa Petition" ("NOID") and allowed Mercy thirty
days to submit additional evidence in opposition.  (R. 128-31.)
On October 28, 2011, Mercy submitted, through counsel, a letter
opposing conclusions reached in the NOID and attached a new
affidavit from Rashid.  (R. 101-127.)  On September 27, 2012,
USCIS issued its final denial of the I-130 Petition after
finding that Rashid entered into his previous marriage with Ms.
Dempsey with the intent of evading immigration laws, which
barred approval of the Second Petition under section 204(c) of
the INA.  (R. 95-100.)

On October 25, 2012, Mercy and Rashid, through counsel, noticed an appeal from USCIS's decision to the Board of Immigration Appeals ("BIA").  (R. 77-94.)  Homeland Security filed a response to the appeal on December 20, 2012.  (R. 73-74.)  On December 11, 2013, the BIA remanded the petition back to USCIS to "place into the record" missing documents that were necessary for review.  (R. 69-70.)  USCIS subsequently moved the BIA to accept the missing documents into the record.  (R. 24-26.)  Mercy and Rashid, through counsel, filed another brief in response.  (R. 14-20.)  On October 15, 2014, the BIA dismissed the appeal and concluded "that there is substantial and probative evidence to support the finding that the beneficiary previously engaged in marriage fraud when he was married to Celeste Dempsey, such that he is ineligible for approval of the subsequent visa petition filed on his behalf by his current wife."  (R. 5-7.)

On February 25, 2015, Mercy and Rashid (collectively "Plaintiffs") filed this lawsuit against Defendants Kimberly Zanotti, Field Office Director of the Washington Field Office for USCIS, Leon Rodriguez, Director of USCIS, Eric H. Holder, Jr., then-United States Attorney General, and Jeh Johnson, Secretary of Homeland Security (collectively "Defendants"), challenging USCIS's denial of the I-130 Petition.  (Compl. [Dkt. 1].)  Plaintiffs ask the Court to vacate Defendants' order

denying the I-130 Petition and ask the Court to grant the I-130 Petition. (Compl. at 11.) The parties filed cross-motions for summary judgment with memoranda in support. (Pl.'s Mot. for Summ. J. [Dkt. 7]; Defs.' Mot. for Summ. J. [Dkt. 11]; Defs.' Mem. in Supp. of Mot. for Summ. J. [Dkt. 12].) Having been fully briefed and argued, the motions are ripe for disposition.

## II. Legal Standard

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The claims in this case, however, involve final action by USCIS, i.e., the denial of the I-130 petition, and dismissal of the appeal by the BIA, which is subject to judicial review under the APA. 5 U.S.C. § 702; see also Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612, 619 (4th Cir. 2010).

"A court conducting judicial review under the APA does not resolve factual questions, but instead determines 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" Friends of Back Bay v. U.S. Army Corps of Engineers, No. 2:10cv270 (HCM), 2011 WL 12473234, at *4 (E.D. Va. Feb. 9, 2011)

(citations omitted).  Accordingly, "in a case involving review of a final agency action under the APA . . . the standard set forth in Rule 56(c) does not apply because of the limited role of the court in reviewing the administrative record."  Id. (citation omitted); see also Spelman v. McHugh, --- F. Supp. 3d ---, 2014 WL 4178211, at *2 (D.D.C. Aug. 22, 2014) (citations omitted).  Stated differently, in this posture, "summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  Friends of Back Bay, 2011 WL 12473234, at *4 (citation omitted).  Thus, judicial review is confined to review of the administrative record from proceedings before the agency.  Camp v. Pitts, 411 U.S. 138, 142 (1973).

On judicial review, this Court must set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The standard of review is extremely "narrow" and does not authorize a district court "to substitute its judgment for that of the agency."  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).  Indeed, this Court's review is "highly deferential, with a presumption in favor of finding the agency action valid."  Ohio Valley Envtl.

Coal v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009).

### III. Analysis

Plaintiffs ask the Court to vacate the BIA's final order of dismissal[5] of the visa petition on two grounds. (See generally Compl.)  First, Plaintiffs contend that the denial of Mercy's I-130 Petition was arbitrary, capricious, and not in accordance with law. (Pl.'s Mot. at 17-27.[6])  Second, Plaintiffs argue that the denial of Mercy's I-130 Petition violated the Due Process Clause of the Fifth Amendment. (Id. at 27-32.)  Before the Court addresses each argument, a brief review of the substantive immigration law is necessary.

A United States citizen may file an I-130 visa petition to classify his or her alien spouse, the beneficiary, as an "immediate relative."  8 U.S.C. § 1154.  The petitioner

---

[5] The BIA reviewed USCIS's denial of Mercy's I-130 petition de novo and issued its own opinion without adopting the USCIS written opinion. (R. 5-7.)  When the BIA decision affirms USCIS's denial of a I-130 petition and adopts the rationale set forth in USCIS's decision, both decisions are subject to review by the federal district court.  See, e.g., Zemeka v. Holder, 989 F. Supp. 2d 122, 128 (D.D.C. 2013) (citation omitted).  Here, because the BIA issued its own decision, the Court will review that decision as the final agency action, in accordance with Plaintiffs' briefing.  Cf. Tolesa v. Holder, 353 F. App'x 815, 818 (4th Cir. 2009) ("While ordinarily we review only the decision of the BIA, when the BIA adopts the reasoning of the IJ and summarily affirms, we review the IJ's decision."); see also Pl.'s Mot. at 17 ("The Board issued its own opinion without adopting the USCIS decision.  Therefore, the Court reviews the BIA decision for compliance with the APA.").
[6] The Court adopts the pagination assigned by CM/ECF to the parties' briefs.

citizen bears the burden of establishing eligibility for the benefit sought.  Matter of Phillis, 15 I. & N. Dec. 385, 386 (1975).  The petitioner must furnish sufficient documentation that establishes, inter alia, "the claimed relationship of the petitioner [U.S. Citizen] to the beneficiary [alien]."  8 C.F.R. § 204.1(f)(1).  USCIS then must conduct "an investigation of the facts in each case" to determine whether to approve the petition.  8 U.S.C. § 1154(b).  If USCIS "determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative," the petition shall be approved.  Id.  Approval of the petition "renders the alien spouse eligible for immigrant status." Pereira v. Immigration and Naturalization Serv., 342 F.2d 422, 423 (1st Cir. 1965).

"The director [of USCIS] will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence . . . [that the alien] has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws."  8 C.F.R. § 204.2(a)(1)(ii) (citing 8 U.S.C. § 1154(c)).  Stated differently, USCIS must deny a petition if it concludes there is substantial and probative evidence that a purported marriage is fraudulent.  Moreover, USCIS shall deny an immigrant visa to any individual who has entered into a fraudulent marriage at any

time and sought an immigration benefit as a result, regardless

of the legitimacy of the current marriage.  Specifically:

> [N]o petition shall be approved if (1) the
> alien has previously been accorded, or has
> sought to be accorded, an immediate relative
> or preference status as the spouse of a
> citizen of the United States or the spouse
> of an alien lawfully admitted for permanent
> residence, by reason of a marriage
> determined by the Attorney General to have
> been entered into for the purpose of evading
> the immigration laws, or (2) the Attorney
> General has determined that the alien has
> attempted or conspired to enter into a
> marriage for the purpose of evading the
> immigration laws.

8 U.S.C. § 1154(c); see also Osakwe v. Mukasey, 534 F.3d 977,

979 (8th Cir. 2008) ("It goes without saying that the [US]CIS's

determination of marriage fraud carries great consequences as an

alien may be permanently ineligible to obtain an I-130 visa even

if he subsequently enters into a bona fide marriage with a U.S.

citizen.") (citing 8 U.S.C. § 1154(c)).

A finding of marriage fraud must be supported by

"substantial and probative" evidence.  8 C.F.R. §

204.2(a)(1)(ii); Matter of Tawfik, 20 I. & N. Dec. 166, 167-68

(1990).

> In making that adjudication, [USCIS] may
> rely on any relevant evidence, including
> evidence having its origin in prior . . .
> proceedings involving the beneficiary, or in
> court proceedings involving the prior
> marriage.  Ordinarily, [USCIS] should not
> give conclusive effect to determinations
> made in a prior proceeding, but, rather,

should reach his own independent conclusion
based on the evidence before him.

Matter of Tawfik, 20 I. & N. Dec. at 168 (citing Matter of F-, 9

I. & N. Dec. 684 (1962)).  "Although it is not necessary that

the alien have been convicted of, or even prosecuted for the . .

. conspiracy, the evidence . . . must be contained in the

alien's file."  Koffi v. Holder, 487 F. App'x 658, 659 (2d Cir.

July 11, 2012) (citing 8 C.F.R. § 204.2(a)(1)(ii)).  "The

conduct of the parties after marriage is relevant to their

intent at the time of marriage . . . . Where the parties have

never lived together, the amount of evidence required to

establish that the marriage was not entered into for the

fraudulent purpose of evading the immigration laws may be

considerable."  Matter of Phillis, 15 I. & N. Dec. 385, 387

(1975).

Once USCIS discovers evidence of marriage fraud, the

agency issues a "Notice of Intent to Deny" the petition ("NOID")

to the petitioner with an opportunity to set forth additional

evidence to overcome this conclusion.  See id.; see also 8

C.F.R. § 103.2(b)(8)(iv).  The NOID "will be communicated by

regular or electronic mail and will specify the type of evidence

required, and whether initial evidence or additional evidence is

required, or the bases for the proposed denial sufficient to

give the applicant or petitioner adequate notice and sufficient

information to respond." 8 C.F.R. § 103.2(b)(8)(iv). The petitioner is therefore advised of the derogatory information and given an opportunity to respond or explain. 8 C.F.R. § 103.2(b)(16)(i). Because the petitioner bears the ultimate burden of proving the beneficiary's eligibility, the petitioner "must therefore rebut any evidence of marriage fraud 'in the alien's file' with proof that the prior marriage was bona fide, i.e., not fraudulent. Bourisquot v. Holder, 569 F. App'x 35, 36 (2d Cir. June 17, 2014) (citing 8 C.F.R. § 204.2(a)(1)(ii)) (additional citations omitted). After receiving any response to the NOID, USCIS determines whether the petition should be approved. USCIS denials of I-130 petitions for alien relatives are reviewed administratively by the BIA. 8 C.F.R. § 1204.1. BIA review is conducted de novo. 8 C.F.R. § 1003.1(d)(3)(iii).

For the following reasons, the Court finds that the BIA's dismissal of Mercy's appeal was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and that the denial did not violate Mercy's Due Process rights. Accordingly, judgment will be entered in Defendants' favor.

## A. APA Review

The BIA concluded that "there is substantial and probative evidence to support the finding that [Rashid] previously engaged in marriage fraud when he was married to Celeste Dempsey, such that he is ineligible for approval of the

13

subsequent visa petition filed on his behalf by [Mercy]."  (R. 5.)  Specifically, the BIA found the following evidence in the record supported this conclusion: (1) Rashid and Ms. Dempsey's Divorce Decree stated that they were separated on December 18, 2005, a mere two months after they were married, and a day before Ms. Dempsey filed the visa petition for Rashid; (2) Rashid and Ms. Dempsey did not cohabitate during their marriage and Rashid provided contradictory evidence about their cohabitation; and (3) Ms. Dempsey made statements during the interview with USCIS in July of 2006 that she had not submitted documentation attached to the petition, and that portions of the documentation had been altered.  The Court finds that the BIA did not act arbitrarily or capriciously when it dismissed Mercy's appeal from the denial of the I-130 application based on the substantial and probative evidence of marriage fraud in the record.

Here, on judicial review, the Court reviews the record with "high deference" to the agency's findings and is not authorized "to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).  Stated differently, it is not the province of this Court to determine whether substantial and probative evidence of marriage fraud actually exists in the record -- that

would constitute improper de novo review.  Instead, the Court
merely asks whether the agency acted arbitrarily, capriciously,
or not in accordance with law when it concluded that substantial
and probative evidence of marriage fraud existed in the record.
The Court must only determine whether the agency "examine[d] the
relevant data and articulate[d] a satisfactory explanation for
its action including a 'rational connection between the facts
found and the choice made.'"  Motor Vehicle Mfrs. Ass'n of U.S.,
Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)
(quoting Burlington Truck Lines v. United States, 371 U.S. 156,
168 (1962)).  The Court concludes that such a rational
connection exists here.

     At the heart of Plaintiffs' argument in this regard is
their plain disagreement with the BIA's findings of fact and
weighing of arguably contradictory evidence in the record.
(See, e.g., Pl.'s Mot. at 17-18 (disagreeing with the conclusion
for why Ms. Dempsey withdrew her petition); at 18 (advocating
that Rashid explained in a sworn affidavit that the date of
separation in the divorce decree was a typographical error); at
20 (citing the certificate of title for a jointly owned 1986
Toyota, a life insurance policy, federal credit union
statements, telephone bills, and auto insurance as evidence of
cohabitation); at 20-21 (explaining Rashid's statements
regarding the couples' visits with each other); at 21-22 (noting

ambiguity in Ms. Dempsey's address); at 23-24 (contesting the finding of altered documents).)  In essence, however, Plaintiffs are asking the Court to "substitute its judgment for that of the agency," which is expressly prohibited.  The agency is charged with making factual findings, which necessarily includes weighing contradicting evidence.  Cf. Doss v. Director, Office of Workers' Compensation Programs, 53 F.3d 654, 658-59 (4th Cir. 1995) (discussing judicial review for substantial evidence in the record from administrative proceedings).  The denial of Mercy's I-130 Petition will stand so long as there was a rational basis for the decision, i.e., the finding of marriage fraud.  See Oddo v. Reno, 175 F.3d 1015 (Table), 1999 WL 170173, at *2 (4th Cir. Mar. 29, 1999) (per curiam) ("This is a highly deferential standard and our review is limited.  We will not substitute our judgment for that of the INS."); see also Akinjiola v. Holder, No. ELH-12-2597, 2014 WL 641702, at *5-7 (D. Md. Feb. 14, 2014) (finding USCIS "rationally concluded that the evidence [petitioner] submitted to support the validity of the . . . marriage was outweighed by the agency's evidence of fraud.").

Here, the BIA did not act arbitrarily when it concluded substantial and probative evidence supported a finding of marriage fraud.  Rashid and Ms. Dempsey were legally separated only two months after they were married, there is no

16

evidence in the record of any intended permanent cohabitation, Ms. Dempsey withdrew the petition after valid questions were raised surrounding the legitimacy of the documents filed in support of the petition, and Rashid's own statements regarding the marriage were contradictory.  See Bourisquot, 569 F. App'x 35, 36 (2d Cir. June 17, 2014) (concluding the BIA's decision was supported by substantial and probative evidence of marriage fraud where "the two separated immediately after the marriage and never spoke to or saw each other again; and they never shared any assets or property.").  Moreover, USCIS gave Plaintiffs an opportunity to overcome this conclusion by issuing the NOID and the reasons it intended to deny Mercy's petition. At that point in time, it was then appropriate for Mercy to contest the proposed factual findings of USCIS, and again to raise such a challenge on de novo appeal to the BIA.  But here and now, this Court is constrained to a much narrower review standard.  See, e.g., Alabed v. Crawford, No. 1:13-cv-2006-SKO, 2015 WL 1889289, at *9 ("The USCIS' denial of an I-130 petition based on a fraudulent marriage 'will stand if the record reveals a rational basis' for the agency's decision.") (citing 8 U.S.C. § 1101).  Based on the controlling statutes and the evidence in the record, which showed an early date of separation, inconsistent evidence of cohabitation, and inconsistent statements by Ms. Dempsey and Rashid, the Court finds the BIA's

17

dismissal of Mercy's appeal was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Instead, the Court finds a sufficiently rational basis in the record for the decision.

The Court is mindful of the "great consequences" that follow a finding of marriage fraud. Osakwe v. Mukasey, 534 F.3d 977, 979 (8th Cir. 2008). At this stage of review, however, the Court looks only for arbitrary action by the agency that violates the governing statutes and regulations. Mere disagreement with the factual findings by the agency wholly fails to meet this heavy burden. In other words, Plaintiffs have failed to show the BIA's dismissal was arbitrary or not in accordance with law. Accordingly, the Court will deny Plaintiffs' motion and grant Defendants' motion on this basis.

B. Due Process

Plaintiffs also contend that the denial of Mercy's I-130 Petition violated the Due Process Clause of the Fifth Amendment when they were not given the opportunity to be heard at a meaningful time and in a meaningful manner. (Pl.'s Mot. at 27-32.) It is undisputed that Plaintiffs raise this constitutional claim for the first time in this proceeding, and did not raise it before the BIA or USCIS. The Court will also deny Plaintiffs' motion on this basis for failure to exhaust their administrative remedies regarding this claim.

18

Alternatively, under recent Supreme Court precedent, the Court would find there is no constitutionally-protected liberty interest to reside with one's alien spouse, and thus, no due process violation, and even if there was such an interest, the agency provided sufficient procedures to satisfy due process.

Constitutional claims, just like any other claim that could be raised before an administrative agency, are not exempt from administrative exhaustion requirements. Nationsbank Corp. v. Herman, 174 F.3d 424, 429 (4th Cir. 1999) ("[Plaintiff's] first argument fails under our consistent and unambiguous line of cases rejecting the contention that constitutional claims should be exempt from exhaustion requirements.") (citing cases). Thus, alleged due process violations must be raised in administrative immigration proceedings before they can be raised in federal court. Farrokhi v. U.S. Immigration & Naturalization Serv., 900 F.2d 697, 700-701 (4th Cir. 1990) ("As a general rule, an alien who has failed to raise claims during an appeal to the BIA has waived his right to raise those claims before a federal court on appeal of the BIA's decision.") (citing cases). Plaintiffs argue, and the Fourth Circuit has recognized but declined to follow, an exception that the Ninth Circuit developed "for due process claims, holding that aliens may raise such claims in the federal courts even if they have failed to raise them before the BIA . . . ." Id. at 701 ("However, to the

extent the Ninth Circuit would excuse failure to raise a due process claim which, like [Plaintiff's] due process claim, does not seek to invalidate a congressional enactment, we think the Ninth Circuit's rule might go too far.  <u>Nothing appears to divest the BIA from hearing procedural due process claims that do not seek invalidation of congressional enactments</u>.") (emphasis added).  Plaintiffs attempt to claim that their due process rights were violated when they were not given an opportunity to be heard, or a hearing, before the USCIS or BIA. Stated differently, Plaintiffs do not specifically seek invalidation of a congressional enactment, but instead attempt to challenge the I-130 petitioning process.  There is nothing to suggest the BIA is divested from hearing such a claim, and because Plaintiffs failed to raise this claim below, they cannot raise it for the first time now.  <u>Id.</u>

     In any event, because Plaintiffs' constitutional claim is without merit under recent Supreme Court precedent, the Court would alternatively deny it on this basis.  <u>See</u> <u>Kerry v. Din</u>, 135 S. Ct. 2128 (2015) (Scalia, J.).  In <u>Din</u>, a sharply divided plurality of the Supreme Court recently held that assuming a citizen had a procedural due process right to reside with her alien spouse, due process requirements were satisfied when an agency officer informed the citizen that her husband was inadmissible under the INA's "terrorist activities" bar.  <u>Id.</u>

So too here, insofar as Mercy can sustain a procedural due process violation based on the denial of her I-130 petition,[7] USCIS provided the necessary due process protections when it issued the extremely detailed NOID, which listed the reasons her petition would be denied.  The NOID also gave Mercy an opportunity to present additional evidence to persuade the USCIS to reach a different conclusion.  Thus, even though Plaintiffs failed to exhaust the administrative remedies available for their due process claim, the Court would alternatively hold that Plaintiffs were not deprived of "life, liberty, or property" when USCIS and BIA denied Mercy's I-130 petition, and to the extent any deprivation occurred, the NOID procedure was more than the due process clause requires.  Din, 135 S. Ct. at 2138 ("The Government has not refused to recognize Din's marriage to Berashk, and Din remains free to live with her husband anywhere in the world that both individuals are permitted to reside.  It has simply determined that Kanishka Berashk engaged in . . . activities [that violated] the Immigration and Nationality Act, and has therefore denied him [permission to legally reside] in the country.").  For these reasons, the Court will deny

---

[7] "Din, of course, could not conceivably claim that the denial of Berashk's visa application deprived her--or for that matter even Berashk--of life or property; and under the above described historical understanding, a claim that it deprived her of liberty is equally absurd."  Din, 135 S. Ct. at 2132-33.

Plaintiffs' motion for summary judgment and grant Defendants'

motion for summary judgment on this basis.

### IV. Conclusion

For the foregoing reasons, the Court will deny

Plaintiffs' motion for summary judgment, grant Defendants'

motion for summary judgment, and enter judgment in Defendants'

favor.

An appropriate Order shall issue.

/s/
July 16, 2015                        James C. Cacheris
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE

22